UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Robin Foley *et al.*

    v.                          Civil No. 10-cv-335-JL
                                Opinion No. 2012 DNH 081
Town of Lee *et al.*


**MEMORANDUM ORDER**

    This case, arising from a dispute over a vacation camping trailer at a campground, presents a question over the due process guaranteed by the Constitution before state officials can deprive a citizen of the property in his possession.  The plaintiffs, Robin Foley, Gregory Vankooiman, and Foley's two minor children, claim that the Town of Lee, its police department, its chief of police, and three of its police officers (the "municipal defendants"), as well as the owner of the camper, Brenda Tenaglia,[1] violated the plaintiffs' constitutional rights to procedural and substantive due process by forcing them, under threat of arrest, to leave the camper and the campground.  The plaintiffs also claim that the defendants committed the state-law torts of trespass to chattels and intentional infliction of

---

[1]While Brenda Tenaglia was known as "Brenda Griffin" at the time of the events at issue, the court will refer to her as "Tenaglia" throughout this order for the sake of clarity.

emotional distress.[2]  This court has subject-matter jurisdiction

under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental

jurisdiction).

The municipal defendants have moved for summary judgment on

all of the plaintiffs' claims against them.  See Fed. R. Civ. P.

56.  They argue that:

> (1) the plaintiffs lacked the protected property
> interest in the camper necessary to support their
> procedural and substantive due process claims,
>
> (2) the municipal defendants' actions fail to "shock
> the conscience" so as to give rise to a substantive due
> process claim,
>
> (3) even if the plaintiffs could show a federal
> constitutional violation, none of the municipal
> defendants can be held liable for it under
> 42 U.S.C. § 1983, because (a) the police chief and
> officers are entitled to qualified immunity for their
> actions, and (b) there is no evidence that those
> actions were carried out under a Town or department
> custom, policy, or practice, and
>
> (4) the chief and officers are entitled to official
> immunity, and the Town and department are entitled to
> municipal immunity, against the plaintiffs' state-law
> tort claims.

Tenaglia has likewise moved for summary judgment, arguing, like

the municipal defendants, that the plaintiffs' federal

---

[2]The plaintiffs also claimed that Tenaglia breached her
contract with them for the purchase and sale of the camper, but
have since agreed to voluntarily dismiss that claim.
Furthermore, at oral argument, the plaintiffs conceded to the
entry of summary judgment against them on their claims that the
defendants had violated the New Hampshire constitution.

constitutional claims fail for lack of a protected property interest and further arguing that, as a matter of law, she neither committed trespass to chattels nor intentional infliction of emotional distress.

Following oral argument, the court grants the summary judgment motions in part and denies them in part. Even if, as the defendants argue, the plaintiffs had no right to occupy the camper under their agreement with Tenaglia, they did have a possessory interest in the camper that entitled them to due process before being deprived of it through the intervention of public officials. When certain of the defendant officers threatened the plaintiffs with arrest if they did not leave the camper, then, that amounted to a violation of the plaintiffs' procedural due process rights. Those rights, moreover, are clearly established, and it would have been clear to a reasonable officer in the defendants' position that they were violating them. So, as fully explained infra, the defendant officers who threatened the plaintiffs with arrest unless they left the camper are not entitled to summary judgment, on the basis of qualified immunity or otherwise, on their procedural due process claim.

But neither the chief nor one of the other defendant officers made such threats, or did anything else to interfere with the plaintiffs' possessory interest in the camper, so those

defendants are entitled to summary judgment on the procedural due process claim.  Furthermore, all of the municipal defendants are entitled to summary judgment on the substantive due process claim because the police conduct was not conscience-shocking, even insofar as it was a procedural due process violation.  There is also no evidence that it was the product of any municipal custom, policy, or practice, so neither the Town nor the department can be held liable for it.  And the municipal defendants are entitled to official immunity against the plaintiffs' trespass to chattels and intentional infliction of emotional distress claims, because no rational trier of fact could find that their conduct allegedly comprising those torts was wanton or reckless.

Tenaglia, for her part, is not a state actor, nor do the plaintiffs assert any other basis for holding her liable for any violations of their constitutional rights, so she is entitled to summary judgment on the due process claims against her.  She is also entitled to summary judgment on the intentional infliction of emotional distress claim, because no rational factfinder could conclude that her actions rose to that level.  A rational factfinder could conclude, however, that Tenaglia committed trespass to chattels, so she is not entitled to summary judgment on that claim.

4

## I.   __Applicable legal standard__

Summary judgment is appropriate if the moving party "shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A party opposing summary judgment "must set forth
specific facts showing that there is a genuine issue for trial."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
Material facts are "facts that might affect the outcome of the
suit under the governing law." Id. at 248.  Where, however, "the
party moving for summary judgment bears the burden of proof on an
issue, he cannot prevail unless the evidence that he provides on
that issue is conclusive." EEOC v. Union Independiente de la
Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49,
55 (1st Cir. 2002) (quotation marks omitted).  As discussed
infra, this standard applies to the municipal defendants'
arguments for summary judgment on the basis of qualified immunity
from the federal constitutional claims, and municipal and
official immunity from the state-law claims, because they bear
the burden of proof on each of those defenses.

The court considers the undisputed material facts and all
reasonable inferences from those facts in the light most
favorable to the nonmoving party.  See, e.g., Avery v. Hughes,

661 F.3d 690, 693 (1st Cir. 2011).  The following facts are set forth accordingly.

## II.  **Background**

On July 7, 2007, Tenaglia entered into a handwritten agreement with Foley and Vankooiman to sell them her 1990 Scamper camping trailer and its attached porch (the "camper"), which were located on a site at the Wellington Camping Park in Lee, New Hampshire.  The plaintiffs agreed to pay Tenaglia $3,500 for the camper in two installments:  $1,600 upon the signing of the agreement and the remaining $1,900 by August 1, 2007.  The agreement provided that if the entire purchase price was not paid by that date, the sale would be void and the money paid would be forfeited.  As part of the deal, the plaintiffs agreed to pay, to Wellington, the $1,050 fee to use the camper's site for the season, from May 15, 2007, to October 15, 2007.  The plaintiffs made the initial payment of $1,600 to Tenaglia on July 7 and a further payment of $200 on July 15, 2007.

Although use of the camper pending payment in full is not expressly addressed in the purchase and sale agreement, Tenaglia allowed the plaintiffs to use the camper after they made the initial payment.[3]  Tenaglia also gave the plaintiffs the paper

---

[3]In response to a leading question at her deposition, Tenaglia characterized this arrangement as a revocable license to

title to the camper, but she did not sign it over to them, and she states that she gave them the document only so they could begin the process of insuring the camper.  The plaintiffs also entered into a written agreement with the camping park "to rent space, on which is to be placed" the camper they were buying from Foley (parenthetical omitted).  The plaintiffs paid the rental fee due under this agreement, which was $1,050 for the season running from April 15, 2007 to September 15, 2007.

As of August 1, 2007, however, the plaintiffs had not made the final payment on the camper.  At some point that day, Tenaglia put a lock on the camper's porch door and left a note asking the plaintiffs to contact her.  Tenaglia also notified the Lee Police Department that she had locked the camper because the buyers had not made the final payment on the day that it was due. Defendant Raymond Pardy, then a Lee police officer, entered the call into the department's records, but there is no evidence of any further involvement on his part.

When Vankooiman subsequently returned to the camper on August 1, he climbed onto the porch and removed the lock.  On

use the camper.  But this characterization was disputed by Foley, who testified to her understanding that the initial payment for the camper gave her an ownership interest--and it is also inconsistent with the parties' agreement that the plaintiffs pay the fee for keeping the camper at the park.  As discussed infra, the nature of the plaintiffs' rights in the camper is ultimately immaterial to the outcome of the summary judgment motions.

August 3, Tenaglia discovered that the plaintiffs were using the camper again, and called the Lee Police Department.  Defendant Brian Huppe, a sergeant, went to the campground in response to the call that same day.  There, Sergeant Huppe met separately with both Tenaglia and Foley, and ultimately convinced Tenaglia to accept payment for the amount due on the camper in the form of a check for the outstanding amount, even though, under the parties' written agreement, the payment was to have been made by August 1, in cash.  So the plaintiffs gave Tenaglia a check for $1,700 written on Vankooiman's account at TD Banknorth.  While Tenaglia accepted the check, she explained that she was reluctant to do so and would be presenting the check to the bank the next day, on August 4, 2007.  When she did so, however, a teller informed Tenaglia that the account lacked funds to cover the check and that the bank would not cash it.[4]

Tenaglia then called Sergeant Huppe and told him that, because the check had not cleared, the plaintiffs could no longer stay in the camper.  Huppe went to the campground and relayed

---

[4]Although the plaintiffs complain that Tenaglia lacks documents showing that the check was rejected for insufficient funds, they provide no evidence to contradict Tenaglia's testimony that, when she tendered the check to the teller, she was informed that the account had insufficient funds and the check could not be cashed.  For the reasons explained infra, whether there were in fact sufficient funds to cover the check is ultimately immaterial, at least for present purposes.

this message to the plaintiffs, telling them they would have to leave by 4 p.m.  Huppe also warned them that any damage to the camper could lead to their arrest.

Later in the day, defendant Scott Flanagan, another officer with the Lee Police Department, relieved Sergeant Huppe when his shift ended, and went to the campground to check on the camper. There, Officer Flanagan found the plaintiffs packing their belongings into their vehicles, although Vankooiman pointed out a few items, including a fish tank (with a pet fish) and a day bed, that he said they did not have room for in the vehicles.  Officer Flanagan told the plaintiffs that they were "close to being arrested" for criminal trespass but gave them until 6 p.m. to leave.  When Officer Flanagan returned to the campground around that time, he again saw the plaintiffs, who at that point appeared to be leaving.  Flanagan then inspected the camper and found that everything was in order.  In fact, the plaintiffs had left the fish tank (with the fish), the day bed, and a few other items of personal property in the camper.  Tenaglia subsequently destroyed or otherwise disposed of these items.

Rather than leaving the camping park, the plaintiffs stayed and visited with friends at another campsite.  Upon learning of this, the campground's owner told Officer Flanagan that the plaintiffs had to leave the premises.  Officer Flanagan proceeded

to relay this message to the plaintiffs, who left the campground
in response.  Two days later, the Lee police chief, defendant
Chester Murch, came upon the plaintiffs as they were leaving the
campground after picking up Foley's daughter from there.  There
is a dispute about what was said during this encounter (Chief
Murch recalls that the plaintiffs told him that they were going
to bring a lawsuit, while Foley maintains that it was Chief Murch
who, on his own initiative, advised the plaintiffs to get a
lawyer), but there is no evidence that Chief Murch said or did
anything to encourage the plaintiffs to leave the campground.
The plaintiffs later brought a small claims action against the
campground's owner in the Durham District Court, which eventually
issued judgment for the owner.

The plaintiffs then brought this action.  The remaining
counts of their amended complaint, see note 2, supra, are:

- • violation of the plaintiff's federal Constitutional
rights, specifically, their "due process and procedural
rights," against all defendants (count 1);

- • intentional infliction of emotional distress, against
all defendants (count 2);

- • "trespass of chattels," against all defendants (count
4); and

- • violations of 42 U.S.C. §§ 1983 and 1985, against the
municipal defendants (count 6).

III.  **Analysis**

The municipal defendants and Tenaglia have separately moved for summary judgment on all of the plaintiffs' claims.  As summarized at the outset, and as explained fully below, the motions are granted except as to the plaintiffs' (1) procedural due process claim against Huppe and Flanagan and (2) trespass to chattels claim against Tenaglia.

A.   **Evidentiary objections**

Before addressing the substance of the motions, the court pauses to address the defendants' objections to various materials the plaintiffs have submitted with their summary judgment opposition.  See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  Specifically, the defendants argue that the following submissions are inadmissible:  (1) a report by the plaintiffs' designated expert witness, Lawrence Vogelman; (2) an agreement between the plaintiffs and a third party extending them a loan, secured by a motor vehicle, on August 16, 2007, (3) Foley's testimony, at her deposition in this case, as to statements by the judge presiding over what Foley described as an action between the plaintiffs and Tenaglia in the Hampton District Court; (4) an order by the Vermont Superior Court awarding attorneys' fees to a plaintiff in

11

a case where a jury found the defendants liable for conversion and an "illegal eviction," but which is completely unrelated to any of the parties or events in this case, Brennan v. Glick, No. 366-8-4 (Vt. Super. Ct. July 29, 2009), and (5) an on-line news article reporting on the jury's verdict in that case.

As the municipal defendants point out, items (4) and (5) are plainly irrelevant to any issue presented by the summary judgment motions, and item (2) appears to be irrelevant as well.  See Fed. R. Evid. 401, 402.  The plaintiffs rely on the loan to show that they "had the resources to pay the alleged debt" to Tenaglia, but they do not explain the relevance of that fact to any of their remaining claims, and none is apparent to the court.

The remaining items, (1) and (3), are inadmissible hearsay. See Fed. R. Evid. 801, 802.  "It is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted."  Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011) (quotation marks omitted).  At her deposition, Foley testified to statements by the judge, during what Foley described as an action between the plaintiffs and Tenaglia in Hampton District Court, to the effect that the plaintiffs owned the camper.  By Foley's own account, however, those statements were not part of a decision resulting in any final judgment on the merits, so they are not entitled to any collateral estoppel

12

effect, see, e.g., In re Michael E., 162 N.H. 520, 523 (2011),
and the plaintiffs make no such argument anyway.  It follows
that, at best, the judge's statements are judicial findings in
another matter, which are themselves inadmissible hearsay.  See
Learner v. Marvin Windows, 2008 DNH 212, 6-7 n.3 (citing cases).
Foley's account of the judge's statements, moreover, adds another
layer of hearsay.  See Fed. R. Evid. 805.

Finally, the expert report also meets the literal definition
of hearsay, e.g., an out-of-court statement offered for its
truth. See Fed. R. Evid. 801(a).  Even if that deficiency were
overlooked, though, the report's conclusions that the defendants
"had no legal authority to arrest, or threaten the arrest, of the
plaintiffs, without a warrant" and the like are not admissible
opinion testimony.  "It is black-letter law that it is not for
witnesses to instruct the jury as to applicable principles of
law." Nieves-Villaneuva v. Soto-Rivera, 133 F.3d 92, 99 (1st
Cir. 1997) (quotation marks and bracketing omitted).

The plaintiffs provide no argument that any of these
materials are admissible, only a conclusory--and inadequate--
statement that they "believe the information is relevant and
admissible and should be heard by the trier of fact to determine
the weight of the evidence and apply them to the elements of each
of the offenses."  Accordingly, none of the challenged materials

can be considered on summary judgment, because they have not been

"presented in a form that would be admissible in evidence." Fed.

R. Civ. P. 56(c).  Even if the court took the materials into

account, they would not change the outcome of the summary

judgment motions (indeed, as just discussed, the majority of the

material is irrelevant to the motions anyway).

**B.   Merits of the claims**

    **1.   Claims against the municipal defendants**

    **a.   Violation of plaintiffs' federal due process rights**

The plaintiffs claim that the municipal defendants violated

the federal Constitution, specifically, the plaintiffs' "due

process and procedural rights" under the Fourteenth Amendment, by

threatening them with arrest if they did not vacate the camper

and the campground.  The plaintiffs claim violations of both

their procedural and substantive due process rights, and seek to

recover damages under 42 U.S.C. § 1983.[5]  For the reasons

---

[5]As noted supra, the plaintiffs' amended complaint also
cites 42 U.S.C. § 1985, but a claim under that statute requires,
inter alia, a conspiracy with the purpose of depriving a
plaintiff of equal protection, which in turn "requires some
racial, or perhaps otherwise class-based, invidiously
discriminatory animus."  Perez-Sanchez v. Pub. Bldg. Auth., 531
F.3d 104, 107 (1st Cir. 2008) (quotation marks omitted).  The
plaintiffs do not allege, let alone provide any evidence, of such
a conspiracy, nor do they even address the § 1985 claim in their
summary judgment papers.  The § 1985 claim therefore had no merit
in the first place, but is waived in any event.  Similarly, while
the plaintiffs also invoke the due process clause of the Fifth

explained fully _infra_, the municipal defendants are entitled to
summary judgment on all of the plaintiffs' § 1983 claims except
for their procedural due process claims against Sergeant Huppe
and Officer Flanagan.

> ### i.   Procedural due process

The due process clause of the Fourteenth Amendment provides
that no state shall "deprive any person of life, liberty, or
property, without due process of law."  To prevail on a
procedural due process claim, then, a plaintiff must show that
she has a protected interest in life, liberty, or property and
that the defendants deprived her of her protected interest
without constitutionally adequate process.  See, e.g., Garcia-
Rubiera v. Fortuno, 665 F.3d 261, 270 (1st Cir. 2011); Air
Sunshine, Inc. v. Carl, 663 F.3d 27, 34 (1st Cir. 2011).  In
moving for summary judgment on this claim, the defendants argue
that the plaintiffs lacked any protected property interest in the
camper, so the officers' threats did not violate the plaintiffs'
procedural due process rights.

---

Amendment, that "applies only to actions of the federal
government--not to those of state or local governments."
Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007)
(internal quotation marks omitted).  So any Fifth Amendment claim
is without merit as well.

"The Fourteenth Amendment's protection of 'property,' however, has never been interpreted to safeguard only the rights of undisputed ownership." Fuentes v. Shevin, 407 U.S. 67, 86 (1972). The appellants in Fuentes challenged state laws that "provid[ed] for the issuance of writs ordering state agents to seize a person's possessions, simply upon the ex parte application of any other person who claims a right to them," i.e., without any prior notice or hearing. Id. at 69-70. Local sheriffs seized certain items of personal property in the appellants' possession under such writs, which had been secured by the creditors who sold those items to the appellants. Id. at 72. The Court held that these seizures "work[ed] a deprivation of property without due process of law insofar as they den[ied] the right to a prior opportunity to be heard before chattels are taken from their possessor." Id. at 96.

Importantly, the appellants in Fuentes, like the plaintiffs here, "lacked full legal title" to the property at issue, which they had purchased "under conditional sales contracts that entitled them to possession and use of the chattels before transfer of title" and, "by the time the goods were summarily repossessed, had made substantial installment payments." Id. The Supreme Court ruled that this gave the appellants a "possessory interest in the goods . . . sufficient to invoke the

16

protection of the due process clause." Id. at 86-87.  They had this protection, moreover, "even assuming that [they] had fallen behind in their installment payments, and that they had no other valid defenses" to enforcement of the contracts.  Id. at 87.

Under Fuentes, then, the plaintiffs had a property interest in the camper protected by the due process clause, even if, as the defendants argue, the plaintiffs no longer had the right to possess it under their agreement with Tenaglia because they failed to make the final payment or otherwise.[6]  "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." Fuentes, 407 U.S. at 87 (footnote omitted); see also, e.g., Dixon v. Lowery, 302 F.3d 857, 864 (8th Cir. 2002) ("Even if a claim to continued possession is in dispute, that possessory interest is still constitutionally protected.").  So the municipal defendants are not entitled to summary judgment on the theory that the plaintiffs lacked any protected property interest in the camper.

_____

[6]The plaintiffs had a similar interest in remaining on the campground as a result of their agreement with the campground's owner--even if, as the defendants suggest, that agreement gave the plaintiffs no right to remain there after they lost their right to occupy the camper.

17

In their summary judgment filings, the municipal defendants
do not question that the actions of Sergeant Huppe and Officer
Flanagan, who threatened the plaintiffs with arrest if they did
not leave the camper, deprived the plaintiffs of this interest in
the camper without constitutionally adequate process.[7]  In any
event, a rational factfinder could come to that conclusion.  See
Abbott, 164 F.3d at 147 (ruling that a reasonable jury could find
a procedural due process violation where the defendant officer
threatened plaintiff with arrest for driving away a vehicle when
his ownership of it was in dispute).

Chief Murch and Officer Pardy, however, did not make any
such threats nor, so far as the record reveals, do anything to
cause the plaintiffs to relinquish their possession of the
camper, their occupancy of the campground, or any other claimed
property interest.  As discussed supra, Pardy's role in the

---

[7]At oral argument, the municipal defendants argued that they
afforded the plaintiffs due process before depriving them of the
camper by way of the officers' investigation into the
circumstances of the plaintiffs' possession of it, which showed
(albeit based only on a report from Tenaglia) that there were
insufficient funds to cover the check they had given her for the
final payment.  The court normally ignores theories that are
raised for the first time at oral argument, see Doe v.
Friendfinder, Inc., 540 F. Supp. 2d 288, 304 n.19 (D.N.H. 2008),
and, in any event, this theory is plainly without merit in light
of Fuentes.  "At the heart of Fuentes is the principle that it is
not for law enforcement officers to decide who is entitled to
possession of property.  Rather, it is the domain of the courts."
Abbott v. Latshaw, 164 F.3d 141, 149 (3d Cir. 1998).

complained-of events was limited to entering a report of
Tenaglia's initial call into police department records, while
Murch simply spoke to the plaintiffs as they were leaving the
campground (and, so far as the record indicates, said nothing to
hasten their departure or to discourage them from returning).
"It is well-settled that only those individuals who participated
in the conduct that deprived the plaintiff of his rights can be
held liable" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437
F.3d 145, 146 (1st Cir. 2006) (quotation marks omitted).  Pardy
and Murch are therefore entitled to summary judgment on the
plaintiffs' procedural due process claim.

    The municipal defendants also seek summary judgment on the
procedural due process claim on the basis of qualified immunity.
"The defendants are entitled to qualified immunity unless (1) the
facts alleged or shown by the plaintiff make out a violation of a
constitutional right and (2) such right was clearly established
at the time of the defendants' alleged violations."  Feliciano-
Hernandez v. Pereira-Castillo, 663 F.3d 527, 532 (1st Cir. 2011).
As just discussed, the plaintiffs have succeeded in showing that
Huppe and Flanagan violated the plaintiffs' right to procedural
due process, so the inquiry proceeds to the second step, i.e.,
whether the right was clearly established at the time of the
violation.  "A right is clearly established only if it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.  The municipal defendants have the burden of showing otherwise, since qualified immunity is affirmative defense.  See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001).

The municipal defendants have not carried that burden here. While the unconstitutional nature of a defendant's conduct "must be apparent in light of pre-existing case law" to amount to the violation of a clearly established right, Lopera v. Town of Coventry, 640 F.3d 388, 397 (1st Cir. 2011), this requires "merely that the prior case law [] give the officer reasonable notice that the specific conduct [he] is alleged to have committed in the litigation is unlawful," Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 66 (1st Cir. 2004).  Here, as just discussed, the Supreme Court's 1972 decision in Fuentes served as reasonable notice to Huppe and Flanagan that, by threatening the plaintiffs with arrest if they did not surrender the camper, the officers were denying the plaintiffs their constitutional right to due process by depriving them of their possessory interest in the camper without prior notice or hearing.

As also just discussed, Fuentes additionally makes clear that the plaintiffs enjoyed this right regardless of the strength of their claimed right to continued possession of the camper.  So

20

the municipal defendants' argument that, in the interactions between the responding officers and the plaintiffs, the plaintiffs "admitted that they had not completed the terms of the purchase and sale agreement, they failed to produce any lease and provided nothing beyond their protests they should be allowed to come up with the money" (even if factually accurate) does not support their qualified immunity defense.  "The right to be heard does not depend upon an advance showing that one will prevail at the hearing."  Fuentes, 407 U.S. at 87.  The municipal defendants, however, do not discuss--or even acknowledge--Fuentes in making their qualified immunity argument.

     Several federal courts of appeals have ruled, prior to the events at issue here, that "[r]easonable police officers should know from the established precedent of Fuentes that their role is not to be participants in property deprivations without notice and a hearing" and have accordingly denied qualified immunity to officers who have done so.  Abbott, 164 F.3d at 149; see also, e.g., Marcus v. McCollum, 394 F.3d 813, 823-24 (10th Cir. 2004); Thomas v. Cohen, 304 F.3d 563, 580-81 (6th Cir. 2002); Dixon, 302 F.3d at 865-66.

     In arguing for qualified immunity nonetheless, the municipal defendants rely exclusively on the per curiam decision by our Court of Appeals in Higgins v. Penobscot County Sheriff's

Department, 446 F.3d 11 (1st Cir. 2006).[8]  There, as here, the
defendant law enforcement officer told the plaintiff that he
would be arrested if he remained on the property where he had
been staying, even though the he had raised "an ongoing
disagreement over ownership of the property and his right to
reside there."  Id. at 12-13.  There, as here, the plaintiff
claimed that this violated his constitutional right to due
process.  Id. at 13.  While the Court of Appeals recognized that
"in certain circumstances, a police officer's participation in an
unlawful eviction can implicate a tenant's . . . Fourteenth
Amendment rights and give rise to liability," it ruled that the
defendant was entitled to qualified immunity against the
plaintiff's procedural due process claim.  Id. at 14.

    The court explained that the defendant officer:

    encountered a volatile and potentially dangerous
    situation--described by [the plaintiff] himself as a
    'screaming contest'--when [the officer] arrived.  The
    subject of the dispute was a man who . . . claimed a

---

[8]At oral argument, the municipal defendants also relied on
the fact that, while New Hampshire law prevents the use of self-
help to effectuate an eviction, see N.H. Rev. Stat. § 540-A:3,
II, it contains no similar prohibition on the use of self-help to
repossess personal property, or limitation on police authority to
assist in such repossessions.  Even assuming this is true,
however, federal law, i.e., the due process clause of the
Fourteenth Amendment, prohibits law enforcement officers from
assisting in such repossessions unless (with exceptions not
applicable here) they are preceded by notice and a hearing.  The
claimed absence of a similar state-law prohibition, then,
provides no support for the qualified immunity defense.

        right to occupy a building with which [the officer] was
        familiar and which [he] reasonably thought, based on
        his prior knowledge of the building and the
        circumstantial evidence at the scene, to have been long
        unoccupied.  The man provided no written lease or other
        documentation to support his claimed occupancy right,
        but only made a conclusory verbal claim of entitlement.
        Opposing this man were several members of his own
        family, all of whom disputed his claimed entitlement
        and told [the officer] that [the man] previously had
        been told to stay away, and one of whom--the man's own
        father--produced a deed which substantiated the
        father's claim of ownership to the property.

Id.  The court ruled that, "[i]n these circumstances, [the

officer's] decision to disbelieve [the plaintiff] and to defuse

the situation by asking him to leave under threat of citation for

trespass was neither plainly incompetent nor involved a

deliberate violation of the law," entitling the officer to

qualified immunity.  Id. at 14-15.

        In likening themselves to the defendant in Higgins, the

municipal defendants seize on the court's observation that the

plaintiff there, "like this case, provided no written lease or

other documentation to support his claimed occupancy right."  But

the result in Higgins did not turn on the plaintiff's failure to

prove his right of occupancy to the officer because, again,

Fuentes holds that "[t]he right to be heard does not depend upon

an advance showing that one will prevail at the hearing."  407

U.S. at 87.  Instead, the result in Higgins proceeds from the

fact that, as the court noted more than once, the officer faced a

                                   23

"volatile" situation that he reasonably believed he had the
authority to "defuse" by ordering the plaintiff to leave under
threat of arrest.  Indeed, the municipal defendants themselves
describe the problem confronting the officer in Higgins as having
to resolve a disputed right to occupancy amidst "a perceived
breach of the peace."

But the municipal defendants do not even claim to have faced
a breach of the peace, "screaming contest," or any other
"volatile [or] potentially dangerous situation" in the dealings
between the plaintiffs and Tengalia, and the record contains no
evidence to that effect.[9]  So, unlike their counterpart in
Higgins, the municipal defendants could not have reasonably
believed that they had the right to deprive the plaintiffs of
their possession of the camper without the prior notice and
hearing guaranteed by the Fourteenth Amendment.  Indeed, "the
overarching lesson of the case law is that officers may act to
diffuse [*sic*] a volatile situation, but may not aid the

---

[9]At oral argument, the municipal defendants suggested that,
by failing to respond to Tenaglia's repeated attempts to contact
them about the final payment prior to August 1, the plaintiffs
had created an atmosphere of "silence" which itself carried the
potential for volatility.  Even if this strained argument is
taken at face value, however, it is undisputed that, by the time
the plaintiffs were first threatened with arrest for remaining
with the camper, that "silence" had been broken by the events of
August 3, during which the plaintiffs gave Tenaglia the check for
the last payment (and, again, those events transpired without any
hint of volatility, at least so far as the record shows).

repossessor in such a way that the repossession would not have occurred but for their assistance." Marcus, 394 F.3d at 819.  In the absence of anything approaching a volatile situation, then, it would have been clear to Sergeant Huppe and Officer Flanagan that they were violating the plaintiffs' constitutional right to due process by threatening them with arrest for failing to leave the camper.  The qualified immunity defense does not entitle Huppe or Flanagan to summary judgment on the plaintiffs' procedural due process claim.

### ii.  Substantive due process

A substantive due process claim requires proof both that the defendants deprived the plaintiffs of a protected interest in life, liberty, or property, see U.S. Const. Am. XIV, cl. 1, and that the defendants' actions in doing so "shock the conscience." See, e.g., Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011); Est. of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  To be conscience-shocking, a defendant's actions "must be truly outrageous, uncivilized, and intolerable . . . and the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error."  Harron, 660 F.3d at 536 (quotation marks and citations omitted).

Taken in the light most favorable to the plaintiffs, the record would not allow a rational factfinder to conclude that the

25

municipal defendants engaged in conscience-shocking conduct.  An
action that "shocks the conscience" typically manifests "an
extreme lack of proportionality, as the test is primarily
concerned with violations of personal rights so severe, so
disproportionate to the need presented, and so inspired by malice
or sadism rather than a merely careless or unwise excess of zeal
that it amounted to a brutal and inhumane abuse of official
power."  Id. (quotation marks omitted).  While, as just
discussed, a jury could find that Sergeant Huppe and Officer
Flanagan denied the plaintiffs procedural due process by
threatening them with arrest unless they left the camper, no jury
could find that those actions--or, for that matter, those of any
of the other municipal defendants--were "brutal and inhumane."
The municipal defendants are entitled to summary judgment on the
substantive due process claim.

### iii.  Municipal liability

For purposes of a § 1983 claim against a town, "[l]iability
only attaches where the municipality causes the deprivation
through an official policy or custom."  Rodriguez v. Municip. of
San Juan, 659 F.3d 168, 181 (1st Cir. 2011).  The plaintiffs do
not argue that, in depriving them of their possession of the
camper without due process, Sergeant Huppe and Officer Flanagan
were acting pursuant to any official policy of the Town of Lee or

its police department.[10]  Instead, the plaintiffs argue that the

defendant officers "did not receive training regarding on how

[*sic*] to handle civil matters and the limits of their authority"

and that this failure to train amounted to a municipal custom

that ultimately caused Huppe and Flanagan to violate the

plaintiff's due process rights.

While a municipality's failure to train its employees can

give rise to § 1983 liability, the "criteria for 'failure to

train' claims are exceptionally stringent," requiring, among

other things, that "the failure to train 'amount[] to deliberate

indifference to the rights of persons with whom the police come

into contact.'"  Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.

1998) (quoting and adding emphasis to City of Canton v. Harris,

489 U.S. 378, 390 (1989)).  This, in turn, ordinarily requires

"[a] pattern of similar constitutional violations by untrained

---

[10]The plaintiffs state that "[t]he conduct of four separate
police officers on a police force of currently six officers[]
establishes the policy and custom of the Town."  But the
plaintiffs provide no authority or developed argument for the
notion that the participation of a majority of a town's police
officers in a single constitutional violation can suffice to
establish such violations as the town's official custom or
policy, and, indeed, the law is to the contrary.  "Proof of a
single incident of unconstitutional activity is not [itself]
sufficient to impose liability" on a municipality under § 1983.
City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985).
Furthermore, as already discussed, Chief Murch and Officer Pardy
did not participate in any conduct which deprived the plaintiffs
of due process, so the majority of Lee's officers were not
involved in the constitutional violation at issue here.

employees" so as to put the municipality on "notice that a course of training is deficient in a particular respect." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).[11]  Here, there is no evidence of even a single prior incident--let alone the requisite pattern of them--where a member of the Lee Police Department deprived a citizen of his or her possession of property without due process, whether through the threat of arrest or otherwise. Without that evidence, no rational factfinder could conclude that either the Town or the police department was deliberately indifferent in failing to train its officers about the constitutional limits of their authority over such matters so as to give rise to municipal liability under § 1983.  The Town and the police department are therefore entitled to summary judgment on the plaintiffs' federal constitutional claims.

**b.  State law claims**

In addition to their federal constitutional claims, the plaintiffs assert claims against the municipal defendants for the state-law torts of intentional infliction of emotional distress and trespass to chattels.  The municipal defendants move for

---

[11]A pattern of similar violations is not necessary to show deliberate indifference "in a narrow range of circumstances" where "the unconstitutional consequences of failing to train [are] patently obvious." Connick, 131 S. Ct. at 1361 (quotation marks omitted).  But this case does not fall within this narrow exception, and the plaintiffs do not argue to the contrary.

summary judgment on these claims.  Specifically, the Town and the
police department invoke their municipal immunity under N.H. Rev.
Stat. Ann. § 507-B:5, while the individual officers (including
Chief Murch) invoke the common-law doctrine of official immunity.
The court agrees with the municipal defendants that, as a matter
of law, these immunities shield them from liability for the
plaintiffs' state-law claims.

### i.   Municipal immunity

N.H. Rev. Stat. Ann. § 507-B:5 provides that "[n]o
governmental unit shall be held liable in any action to recover
for bodily injury, personal injury or property damage except as
provided by this chapter or as is provided or may be provided by
other statute."  The statute's definition of "governmental unit"
includes both a "town" and "departments or agencies thereof."
Id. § 507-B:1, I.  The statute's definition of "personal injury"
includes both "[a]ny injury to the feelings or reputation of a
natural person" and "[w]rongful eviction," id. § 507:B-1, III(a),
while "'property damage' means a loss through injury to, or
destruction of, tangible property," id. § 507-B:1, IV.

The immunity conferred by § 507-B:4, then, encompasses the
plaintiffs' claims for both intentional infliction of emotional
distress and trespass to chattels.  The plaintiffs do not offer
any argument to the contrary, nor do they try to fit their state-

law claims within any of the exceptions to the immunity recognized by the statute.  Instead, the plaintiffs argue that the statutory immunity does not extend to their federal constitutional claims--which is true, but beside the point, since, as just discussed, the plaintiffs have failed to show a triable issue as to the Town's or the department's liability under § 1983.  The Town and the police department are entitled to summary judgment on the plaintiffs' state-law claims.

### ii.  Official immunity

Under the state-law doctrine of official immunity, "municipal police officers are immune from personal liability for decisions, acts or omissions that are:  (1) made within the scope of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Everitt v. Gen. Elec. Co., 156 N.H. 202, 219 (2007).  The defendant bears the burden of proving that official immunity shields the acts in question.  See Belcher v. Paine, 136 N.H. 137, 145 (1992).  The individual officers argue that their acts allegedly constituting intentional infliction of emotional distress and trespass to chattels satisfy all three of the criteria for official immunity.  The court agrees.

There is no question that all of the individual officers' complained-of acts were undertaken as part of their official

duties while in the course of their employment, and that those
acts were discretionary, i.e., "involve[d] the exercise of
personal deliberation and individual professional judgment that
necessarily reflects the facts of the situation and the
professional goal."[12]  Id.  It is likewise clear that none of the
individual officers' acts allegedly constituting intentional
infliction of emotional distress or trespass to chattels was
"wanton or reckless."

First, like a substantive due process claim, a claim for
intentional infliction of emotional distress requires conduct "so
outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as
utterly intolerable in a civilized community."  Mikell v. Sch.
Admin. Unit No. 33, 158 N.H. 723, 728-29 (2009) (quotation marks
omitted).  The officers' conduct--which at its worst consisted of
threats to arrest the plaintiffs if they remained with the camper
beyond an appointed deadline--does not approach this standard,
let alone amount to a "wanton or reckless" violation of it.
"Liability for intentional infliction of emotional distress

---

[12]One potential exception is Pardy's recording Tenaglia's
initial call into the department records, which seems to have
been a mere "ministerial" act, but that distinction is
unimportant since, by doing so, he neither inflicted emotional
distress on the plaintiffs nor trespassed to their chattels and
thus is not liable for either of those torts.

clearly does not extend to mere threats." Tessier v.

Rockefeller, 162 N.H. 324, 341 (2011) (quotation marks omitted).

The officers are entitled to summary judgment on the plaintiffs'

intentional infliction of emotional distress claim.

That leaves the plaintiffs' trespass to chattels claim

against the individual officers.  Under New Hampshire law,

> [o]ne who without consensual or other privilege to do
> so, uses or otherwise intentionally intermeddles with a
> chattel which is in possession of another is liable for
> a trespass to such person if, (a) the chattel is
> impaired as to its condition, quality or value, or
> (b) the possessor is deprived of the use of the chattel
> for a substantial time, or (c) bodily harm is thereby
> caused to the possessor or harm is caused to some
> person or thing in which the possessor has a legally
> protected interest.

Glidden v. Szybiak, 95 N.H. 318, 320 (1949) (quoting Restatement

of Torts § 218 (1939)).  The plaintiffs do not clearly

articulate, in either their amended complaint or any of their

summary judgment briefing, how any of the officers named as

defendants here "used or otherwise intentionally intermeddled"

with any chattels in the plaintiffs' possession so as to give

rise to liability in trespass.  While the amended complaint

alleges that the police "seized personal property by way of

threat of arrest," there is no record evidence that any of the

defendant officers "seized" or otherwise took possession, even

temporarily, of any of the plaintiffs' personal property.

Although Officer Flanagan entered the camper while inspecting it

32

after the plaintiffs' departure, that entry--even assuming it
amounted to "use" or "intermeddling" with a chattel "in
possession" of the plaintiffs--did not itself impair the value of
the camper or deprive the plaintiffs of their use of it for a
substantial time, as would be necessary to give rise to liability
for trespass to chattels.  See id.

At oral argument, the plaintiffs maintained that Officer
Flanagan committed trespass to chattels by threatening the
plaintiffs with arrest if they did not leave the camper by the
appointed deadline--on the theory that the deadline left the
plaintiffs without enough time to remove all of the items of
their personal property, viz., the day bed and the fish tank.
But this theory is not intelligibly set forth in the amended
complaint, so it cannot be raised for the first time in
opposition to a summary judgment motion, see, e.g., Calvi v. Knox
County, 470 F.3d 422, 430-31 (1st Cir. 2006), let alone at oral
argument on that motion, see note 7, supra.

That shortcoming aside, the plaintiffs still have not
explained how Officer Flanagan's ultimatum amounted to his use or
intermeddling with their property so as to give rise to liability
for trespass to chattels under New Hampshire law.  Although the
Restatement (Second) of Torts recognizes that trespass to
chattels will lie for a defendant's "barring a possessor's access

33

to a chattel," id. § 221(c), the New Hampshire Supreme Court does not seem to have considered whether that represents the law of this state and, even if it does (a point that this court need not decide here), it is at best questionable whether Officer Flanagan "barred" the plaintiffs from accessing the property they left with the camper.

To the contrary, it is undisputed that Officer Flanagan allowed the plaintiffs additional time, beyond that granted by Sergeant Huppe, to finish packing their belongings.  There is also no evidence that, after Vankooiman told Officer Flanagan that the plaintiffs did not have room in their vehicles for the day bed and fish tank, Officer Flanagan said or did anything to coerce the plaintiffs into leaving those items behind.  So far as the record reveals, in fact, the plaintiffs did not ask Officer Flanagan for the chance to return to the camper and retrieve those items, or attempt to make any other arrangements to preserve them--such as, most obviously, transporting them to the campsite, occupied by their friends, where the plaintiffs went directly after leaving the camper.

Regardless, even if a rational jury could nevertheless find that Officer Flanagan's threat to arrest the plaintiffs before they had the fullest opportunity to pack up their belongings effectively barred their access to them, no rational jury could

find that this conduct amounted to a wanton or reckless trespass to the plaintiffs' chattels so as to negate the official immunity defense.  The plaintiffs do not argue otherwise; indeed, their summary judgment objection does not even address the defendants' official immunity argument.  The officers are entitled to summary judgment on the plaintiffs' trespass to chattels claim.

### 2.   Claims against Tenaglia

### a.   Federal claims

As noted at the outset, the plaintiffs have agreed to dismiss their breach of contract claim against Tenaglia.  See note 2, supra.  They also agree, in their objection to Tenaglia's summary judgment motion, that their § 1983 claim "is not applicable to" Tenaglia.  This concession is sensible, because a plaintiff bringing a § 1983 claim against a private party, like Tenaglia, must show that the defendant's conduct was "'fairly attributable to the state,'" Santiago v. Puerto Rico, 655 F.3d 61, 67-68 (1st Cir. 2011) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)), and the record contains no evidence to support such a theory here.

The plaintiffs appear to believe that they can nevertheless maintain their claim against Tenaglia for violating their due process rights under the Fourteenth Amendment.  Indeed, the plaintiffs' opposition to her summary judgment motion argues that

35

claim at length, despite their concession that their § 1983 claim
cannot lie against Tenaglia.[13]  They are mistaken.  The
Fourteenth Amendment "affords no shield" against private conduct,
"no matter how unfair that conduct may be."  NCAA v. Tarkanian,
488 U.S. 179, 191 (1988).  Tenaglia is entitled to summary
judgment on the plaintiffs' federal claims.

   **b.   State claims**

   Tenaglia also moves for summary judgment on the plaintiffs'
state-law claims, i.e., for intentional infliction of emotional
distress and trespass to chattels.  As to the former, Tenaglia
argues that no rational jury could find her conduct toward the
plaintiffs was "so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be
regarded as utterly intolerable in a civilized community."
Mikell, 158 N.H. at 728-29.  The court agrees.  Tenaglia's
actions in having the plaintiffs removed from the camper and
disposing of their possessions did not rise to this level as a
matter of law, even if, as the plaintiffs suggest, they were
otherwise "tortious," "intended to inflict emotional distress,"

---

   [13]This is perhaps understandable in light of the fact that,
rather than arguing that constitutional guarantees of due process
do not bind her as a private citizen, Tenaglia, like the
municipal defendants, moved for summary judgment on the ground
that she owed the plaintiffs no due process because they had no
protected property interest.

or "characterized by malice."[14]  Id.  Tenaglia is entitled to
summary judgment on the plaintiffs' claim for intentional
infliction of emotional distress.

Tenaglia is not entitled to summary judgment, though, on the
plaintiffs' claim for trespass to chattels.  There is evidence
that, after the plaintiffs left the camper, Tenaglia destroyed or
otherwise disposed of the items of personal property they had
left behind.  Based on this evidence, a rational jury could find
that Tenaglia intermeddled with the plaintiffs' chattels so as to
impair their condition, quality, or value, creating liability for
trespass to chattels under New Hampshire law.  See Glidden, 95
N.H. at 320; see also Restatement (Second) of Torts § 221(d)
(1965) (noting that "destroying a chattel" amounts to trespass).

In moving for summary judgment on this claim, Tenaglia
argues that the plaintiffs abandoned the personal property by
leaving it in the camper.  It is true that a trespass claim does
not lie against a defendant for intermeddling with the
plaintiff's chattel only after he has abandoned it.  See

---

[14]While the plaintiffs argue that Tenaglia also
intentionally inflicted emotional distress when she "burned a
number of [their] personal belongings in the camp fire in view of
[their] minor child," the evidence they rely on for this argument
consists of inadmissible hearsay which, as already discussed,
cannot be considered on summary judgment.  See Part II.A, supra.
The court need not consider, then, whether such conduct could
give rise to liability for infliction of emotional distress.

Restatement (Second) of Torts § 216 cmt *c.* (1965).  Under New
Hampshire law, however, abandonment requires "both the intent to
abandon the [chattel] and an overt act of abandonment."  New
Hampshire v. Elementis Chem., Inc., 152 N.H. 794, 802-03 (2005).
Viewed in the light most favorable to the plaintiffs, the record
admits of a genuine issue of fact as to whether the plaintiffs
intended to abandon the items they left in the camper.  Tengalia
is not entitled to summary judgment on the plaintiffs' trespass
to chattels claim.

IV.  **Conclusion**

As explained fully above, the municipal defendants' motion
for summary judgment[15] is GRANTED except as to the procedural due
process claim against Huppe and Flanagan, as to which it is
DENIED.  Tenaglia's motion for summary judgment[16] is GRANTED
except as to the trespass to chattels claim, as to which it is
DENIED, and the breach of contract claim, as to which it is MOOT
in light of the plaintiffs' voluntary dismissal of that claim.
As a result, defendants the Town of Lee, the Lee Police
Department, Chester Murch, and Raymond Pardy are TERMINATED from
the case.

---

[15]Document no. 33.

[16]Document no. 36.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  May 9, 2012

cc:  Kimberly A. Zizza, Esq.
     Jacqueline C. Fitzgerald-Boyd, Esq.
     R. Matthew Cairns, Esq.
     Edmund J. Waters, Jr., Esq.