```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Robin Foley *et al.*

    v.                                  Civil No. 10-cv-335-JL
                                                    Opinion No. 2012 DNH 082

Town of Lee *et al.*

## **MEMORANDUM ORDER**

The parties to this lawsuit, a civil rights and tort action arising out of a dispute over a vacation camping trailer at a campground in Lee, New Hampshire, have filed a number of motions in limine seeking to preclude evidence from the upcoming trial. Following this court's recent decision granting the defendants' summary judgment motions in part, the plaintiffs' remaining claims are (1) their claim against two Lee police officers for violating the plaintiffs' right to procedural due process under the Fourteenth Amendment by threatening them with arrest if they remained with the camper, and (2) a claim against the camper's owner, Brenda Tenaglia (formerly known as Brenda Griffin) for trespass to chattels.  See Foley v. Town of Lee, 2012 DNH 081. This court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

The defendants have now moved to exclude the anticipated opinion testimony by the plaintiffs' designated expert witness, arguing that he is unqualified to give it and that it does not

follow from a reliable methodology.  See Fed. R. Evid. 702.  The plaintiffs, Robin Foley, Gregory Vankooiman, and two of Foley's children, have moved to exclude evidence of (1) a small claims action they filed against the campground owner in the state district court, (2) Vankooiman's criminal conviction on a misdemeanor charge of issuing bad checks, and (3) the bank account on which Foley wrote a check that she gave Tenaglia as payment for the camper.[1]  As explained below, the plaintiffs' motion to exclude evidence of Vankooiman's criminal conviction is denied, but all of the other motions are granted.

I.   **Background**

Because the relevant background facts are fully set forth in the recent order on the summary judgment motions, they will be recited here in abbreviated fashion.  In July 2007, Tenaglia entered into a handwritten agreement with Foley and Vankooiman to sell them her camping trailer and its attached porch, which were located on a site at the Wellington Camping Park in Lee.  The agreement required the plaintiffs to pay Tenaglia $3,500 for the

---

[1] The plaintiffs have also filed a motion to exclude records of the custody of one of the children named as a plaintiff.  The defendants have no objection to this motion, however, so it is granted.  See L.R. 7.1(b).  The plaintiffs have also filed a motion for their attorneys' fees "upon prevailing at trial," which, as the defendants point out, is premature unless and until they actually prevail at trial.  So that motion is denied.

2

camper in two installments: $1,600 upon the signing of the agreement and the remaining $1,900 by August 1, 2007. As part of the deal with Tenaglia, the plaintiffs further agreed to pay, to Wellington, the fee to use the camper's site for the season. They also entered into a written agreement with Wellington "to rent space, on which is to be placed" the camper they were buying from Foley (parenthetical omitted).

While the plaintiffs made the initial payment to Tenaglia as contemplated by their agreement, and also paid the seasonal rental fee to Wellington, they had failed to pay Tenaglia the balance on the camper as of August 3, 2007. So Tenaglia called the Lee Police Department, which sent defendant Brian Huppe, a sergeant, to the camping park in response. There, he met separately with both Tenaglia and Foley, and ultimately convinced Tenaglia to accept payment for the amount due on the camper in the form of a check Foley wrote her for the outstanding amount, drawn on Vankooiman's account at TD Banknorth. When Tenaglia presented the check at the bank the next day, however, the teller informed her that the account had insufficient funds to cover the check and that the bank would not cash it.

Tenaglia called Sergeant Huppe, telling him the check had not cleared and that, as a result, the plaintiffs could no longer stay in the camper. In response, Huppe went to the campground

and relayed this message to the plaintiffs, telling them they would have to leave the camper by 4 p.m.  Later in the day, defendant Scott Flanagan, another officer with the Lee Police Department, relieved Huppe when his shift ended, and went to the campground to check on the camper.  There, Officer Flanagan found the plaintiffs packing their belongings into their vehicles.  He told them that they were "close to being arrested" for criminal trespass but gave them until 6 p.m. to leave.

When Officer Flanagan returned to the campground around that time, he saw the plaintiffs, who now appeared to be on their way out of the campground.  In fact, the plaintiffs did not leave the premises, but went to visit with friends at another campsite.  Upon learning of this, the campground's owner told Flanagan that the plaintiffs had to leave the campground.  Flanagan proceeded to relay this message to the plaintiffs, who left the premises in response.  The plaintiffs departed without retrieving all of their personal property from the camper, leaving behind, inter alia, a day bed and a fish tank (with a fish).  Tenaglia subsequently destroyed or otherwise disposed of those items.

The plaintiffs then brought a small action against the campground's owner in the Durham District Court, seeking to recover for a "camping site [they] were unable to enjoy and personal property loss."  Foley v. Wellington, No. 07-40 (N.H.

Dist. Ct. Aug. 16, 2007). Following a hearing, the court entered judgment for the defendant on a "Notice of Decision" form that contains no findings, rulings, or other explanation. There is also no transcript of the hearing.

## II. Analysis

### A. The defendants' motion to preclude expert testimony[2]

The defendants have moved to preclude the proffered opinion testimony of the plaintiffs' designated expert, Lawrence A. Vogelman, an experienced New Hampshire trial attorney. "The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As the structure of this rule suggests, before the factfinder in a case can consider expert testimony over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony satisfies the relevant

---

[2]Document no. 54.

foundational requirements.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).

The defendants have identified three different, but related, expert opinions that Vogelman intends to offer:  (1) that the defendant officers "did not follow established police procedures," (2) that "[i]t was improper for the police defendants to make a legal decision about whether plaintiffs were licensed to or privileged to remain in the camper at the campground absent a court order," and (3) "the police had no authority to assist [Tenaglia] in removing the plaintiffs from the camper or the campground."  The defendants argue that Vogelman lacks the expertise in police procedure necessary to give these opinions and that, in any event, there is no reliable methodology underlying them.

In their objection to the defendants' motion, however, the plaintiffs disclaim any intention "on having [Vogelman] testify as to police procedure but rather the laws as outlined in his expert report and the police authority, if any, under those laws."  This clarification makes it unnecessary for the court to consider whether Vogelman is in fact qualified to opine as to "established police procedures" and, for that matter, whether that testimony would be relevant at trial here (the plaintiffs affirmatively argue that it would not be).

6

Vogelman's proffered opinions as to "the relevant statutes or laws regarding police authority" are inadmissible nonetheless. "It is black-letter law that it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Nieves-Villaneuva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997) (quotation marks and bracketing omitted).  Indeed, the plaintiffs seem to acknowledge as much, stating in their objection that no "expert [is] needed as the Judge instructs the jury on the law."

The plaintiffs go on to state that "not needing an expert does not preclude an expert from testifying," which is true, but beside the point.  It is not the plaintiffs' lack of need for a "legal expert" that prevents Attorney Vogelman from testifying as to "statutes or laws," but the "black-letter" rule, just stated, that it is the court, not an expert witness, who informs the jury as to the law they must apply in the case at hand.  It is for this reason that "[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper." United States v. Mikutowicz, 365 F.3d 65, 73 (1st Cir. 2004). Because the plaintiffs have not offered any other basis for Vogelman's proffered expert testimony, the defendants' motion to exclude that testimony is granted.  This ruling, of course, is without prejudice to the plaintiffs' ability to request appropriate jury instructions on the relevant law at trial.

**B.   The plaintiffs' motion to exclude the small claims action**[3]

The plaintiffs have moved to exclude any evidence of their unsuccessful small claims action against the campground owner, arguing that it is irrelevant. See Fed. R. Evid. 401, 402. The defendants argue that this evidence is "directly relevant to (a) whether plaintiffs did have a right to remain at the campground, and (b) whether the campsite fee is properly boardable." The defendants argue, in fact, that the state district court's judgment against the plaintiffs in their suit against the campground owner collaterally estops them from claiming either that they had the right to remain there, or that they are entitled to damages for being forced to leave.

The defendants' collateral estoppel argument fails. The doctrine of collateral estoppel applies only to an "issue or fact actually litigated and determined in the prior action." Daigle v. City of Portsmouth, 129 N.H. 561, 570 (1987). But this court cannot ascertain what issues were "actually litigated and determined" in the small claims action because, as discussed above, the Durham District Court's judgment is unaccompanied by a written explanation of the reasons for its decision, and no transcript of the hearing was made. "The party contending that an issue has been conclusively litigated and determined in a

---

[3]Document no. 58.

prior action has the burden of proving that contention." Restatement (Second) of Judgments § 27 cmt. *f* (1980). The defendants have not carried their burden to show that the plaintiffs' right to remain on the campground and their entitlement to damages for being made to leave were determined in the small claims action.

Absent such a determination, the fact that the District Court entered judgment against the plaintiffs on their claim against the campground owner is not relevant to whether the plaintiffs had the right to remain there or are entitled to damages against the defendant officer who, they say, forced them to leave.[4] See Fed. R. Evid. 401. Because the defendants have not urged any other basis for the relevance of the plaintiffs' small claims action against the campground owner, the plaintiffs' motion to exclude evidence of that action is granted.

---

[4]This assumes that the plaintiffs' right to remain at the campground, as a matter of state contract or property law, is even relevant to the plaintiffs' remaining claims. As this court explained in its recent summary judgment order, the due process clause protected the plaintiffs' "interest in remaining on the campground as a result of their agreement with the campground's owner--even if, as the defendants suggest, that agreement gave the plaintiffs no right to remain there after they lost their right to occupy the camper." Foley, 2012 DNH 081, at 17 & n.6 (citing Fuentes v. Shevin, 407 U.S. 67, 87 (1972)).

**C.    The plaintiffs' motion to exclude Vankooiman's conviction**[5]

The plaintiffs have also moved to exclude any evidence of Vankooiman's conviction, entered on his guilty plea in Rockingham County Superior Court in February 2008, on a misdemeanor charge of issuing a bad check in violation of N.H. Rev. Stat. Ann. § 638:4. As the defendants point out, however, the plaintiffs intend to call Vankooiman as a witness in this matter, so evidence of the conviction is admissible to attack his character for truthfulness under Rule 609(a)(2) of the Federal Rules of Evidence. That rule provides that evidence of a witness's criminal conviction "for any crime regardless of the punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or a false statement."

A conviction for issuing bad checks under New Hampshire law requires proof that the defendant "issued or passed the check knowing or believing that the check would not be paid by the drawee." N.H. Rev. Stat. Ann. § 638:4, IV(b). This amounts to proof of a "dishonest act" for purposes of Rule 609(a)(2). See Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 655 n.3 (3d Cir. 1989); United States v. Rogers, 853 F.2d 249, 252 (4th Cir. 1988). The plaintiffs do not argue to the contrary.

---

[5]Document no. 59.

Instead, the plaintiffs argue that, because Vankooiman's testimony will be "uncontested," the jury will not have occasion to consider his truthfulness as a witness, making the conviction inadmissible for that purpose.  But the plaintiffs provide no authority for this novel proposition:  that a witness can be impeached with a prior conviction only after the substance of his testimony has been controverted in some way.  It certainly finds no support in the text of Rule 609.  Moreover, it is manifestly not the case that, simply because the testimony of a witness has not been contradicted, the jury is required to accept it, and may not consider the myriad factors--including his or her character for truthfulness--that the law has long recognized as bearing on a witness's credibility.  See, e.g., Quock Ting v. United States, 140 U.S. 417, 420-21 (1891) (enumerating factors that "may be properly considered in determining the weight that should be given to [a witness's] statements, although there be no adverse verbal testimony adduced").

In any event, while certain portions of Vankooiman's testimony are likely to be uncontested, the present record strongly suggests that his testimony will not be undisputed in its entirety.  So, even if Rule 609(a)(2) allowed the impeachment of a witness by a prior conviction only after the substance of his testimony has been contradicted or contested in some respect,

that condition will almost certainly be satisfied here. The plaintiffs' motion to exclude evidence of Vankooiman's conviction for issuing a bad check is denied.[6]

### D. The plaintiffs' motion to exclude bank records[7]

Finally, the plaintiffs have moved to exclude records of an account Vankooiman maintained at TD Banknorth, arguing that they are irrelevant. This is the same account on which Foley wrote the check to cover the final payment on the camper--and the account which, according to Tenaglia's contemporaneous statement to the Lee police and her deposition testimony here, the bank told her held insufficient funds to cover that check. The defendants say that the bank records will show that, in fact, the account held insufficient funds to cover the check (and that the account lacked overdraft protection, and that Foley was not a signatory) making the records relevant under two different theories. Neither theory is persuasive.

First, the defendants argue that the account balance is relevant to "the probable value of additional or substitute

---

[6]The plaintiffs' motion also refers to other items of Vankooiman's criminal history, including "drinking in public" and "an issue regarding payment to the State of New Hampshire for his daughter." The defendants' objection does not address these infractions, so the court has assumed that the defendants do not intend to adduce evidence of them at trial.

[7]Document no. 60.

12

procedural safeguards." The court takes this to mean that, even had the plaintiffs enjoyed due process, in the form of notice and a hearing, before they were allegedly deprived of the camper, that "additional" safeguard would not have helped them, since it would have been shown at the hearing that the plaintiffs had not in fact made the final payment on the camper (as their account lacked sufficient funds to cover the check Foley gave Tenaglia for that purpose). This is simply a variant of the defendants' principal argument for summary judgment on the plaintiffs' due process claims, i.e., that the plaintiffs had no right to due process before being deprived of the camper since they had no interest in it under the terms of their agreement with Tenaglia. But, as the court explained in rejecting that argument, "'[t]he right to be heard does not depend upon an advance showing that one will prevail at the hearing.'" Foley, 2012 DNH 081, 21 (quoting Fuentes, 407 U.S. at 87). Whether the account held funds sufficient to cover the check that Foley gave Tenaglia is irrelevant to the merits of the plaintiffs' due process claim.[8]

Second, the defendants argue that the records are admissible "to impeach [the] credibility" of Foley and Vankooiman, on the theory that they both have made statements that the bank records

---

[8]The defendants have not argued that the bank records are independently relevant to the trespass to chattels claim, so the court has not considered that point.

13

contradict: Foley signed the check and gave it to Tenaglia, which the defendants take as a representation both that there were sufficient funds in the account to cover it and that Foley had signatory authority, while Vankooiman testified in his deposition that "there were sufficient funds in the account and/or that he had overdraft protection." Even taking the defendants' characterization of these statements at face value, however, the defendants may not use extrinsic evidence--such as the bank records--to contradict those statements.

"It is well-established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter." United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993).[9] For the reasons just explained, features of the bank account (its balance, authorized signatories, and whether it had overdraft protection) are collateral matters,

---

[9] As the court of appeals has explained, this rule is similar--in both effect and rationale--to Rule 608(b)'s ban on the use of extrinsic evidence to prove specific instances of a witness's conduct bearing on his or her character for truthfulness. Beauchamp, 986 F.2d at 4 n.1. That rule does not specifically apply to use of the bank records to impeach Foley and Vankooiman, however, because "it is difficult to conceptualize the actual [account balance] as being a 'specific instance of conduct' within the meaning of Rule 608(b)." Id. But Rule 608(b) does bar the use of the records to show, as the defendants suggest, that Tenaglia "told the truth . . . when she advised [] Hupppe [sic] that the bank would not honor the check." See, e.g., United States v. Sumlin, 271 F.3d 274, 282 (D.C. Cir. 2001) ("If offered only to bolster [a witness's] credibility, the extrinsic evidence is barred by Rule 608(b).").

i.e., they are not "relevant to establish a fact of consequence" to the merits of the plaintiffs' due process claim or any other material issue identified by the defendants. United States v. Catalan-Roman, 585 F.3d 453, 468 (1st Cir. 2009). The bank records are therefore inadmissible to impeach Foley or Vankooiman. Because the defendants have not shown that the bank records are independently relevant, or that they are admissible under any other theory, the plaintiffs' motion to exclude those records is granted.[10]

### III. Conclusion

For the foregoing reasons, the defendants' motion to exclude Vogelman's testimony,[11] and plaintiffs' motions to exclude the child custody records,[12] evidence of their lawsuit against the campground owner,[13] and the records of Vankooiman's bank account[14] are GRANTED. The plaintiffs' motion to exclude evidence of

---

[10] This ruling assumes, of course, that the plaintiffs do not "open the door" to the records by stating or implying during the trial that the account did in fact have sufficient funds to cover the check. The plaintiffs--who have stridently argued that very point at other stages of this litigation--are advised to proceed cautiously if they wish to prevent the admission of the records.

[11] Document no. 54.

[12] Document no. 57.

[13] Document no. 58.

[14] Document no. 60.

Vankooiman's conviction for issuing a bad check[15] is DENIED.  The plaintiffs' motion for attorneys' fees[16] is DENIED as premature.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 9, 2012

cc:  Kimberly A. Zizza, Esq.
     Jacqueline C. Fitzgerald Boyd, Esq.
     R. Matthew Cairns, Esq.
     Edmund J. Waters, Jr., Esq.

---

[15]Document no. 59.

[16]Document no. 61.