UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Robin Foley *et al.*

        v.                          Civil No. 10-cv-335-JL
                                    Opinion No. 2012 DNH 189
Brian Huppe *et al.*


**MEMORANDUM ORDER**

        The parties to this lawsuit, a civil rights and tort action
arising out of a dispute over a vacation camping trailer at a
campground in Lee, New Hampshire, disagree over the amount of
fees and costs that the plaintiffs should receive under the Fees
Act.  See 42 U.S.C. § 1988(b).

        During trial, the parties reached a settlement of all
claims, including the plaintiffs' claim under 42 U.S.C. § 1983
that certain police officers in the Town of Lee (known, together
with the Town, the police department, and other officers named
here as the "municipal defendants") had violated the plaintiffs'
right to procedural due process by threatening to arrest them if
they remained with the camping trailer.  As part of the
settlement, the municipal defendants agreed that the plaintiffs
could "submit an application for fees and costs through and
including April 2, 2012, as though pursuant to 42 U.S.C. § 1988,"
to be determined by this court.  This court has jurisdiction
under 28 U.S.C. § 1331 (federal question).

The plaintiffs seek attorneys' fees in the sum of $55,337.54 and "costs and expert fees" in the sum of $6,441.58.[1]  The municipal defendants, however, argue that the plaintiffs should receive only $8,054.39 in fees and $2,639.98 in costs.  While, as fully explained _infra_, the court agrees with the municipal defendants as to the plaintiffs' recoverable costs, the court rules that the plaintiffs can recover $29,664.25 in fees.

## I.  Background

The plaintiffs, Robin Foley, Gregory Vankooiman, and Foley's two minor children, commenced this action in this court on August 3, 2010, through a complaint filed by Jacqueline Fitzgerald-Boyd, an attorney whose office is in Plaistow, New Hampshire. Fitzgerald-Boyd, a member of the bar of this court, simultaneously moved for the admission pro hac vice of Kimberly A. Zizza, an attorney with an office in Bradford, Massachusetts,

---

[1]The plaintiffs' submissions contain some minor discrepancies as to their total claimed fees and costs.  An affidavit by one of their attorneys claims total compensable fees of $55,337.54, while another claims total compensable fees of $55,225 (the small difference is due to 45 fewer minutes of total attorney time).  And one attorneys' affidavit claims total compensable costs of $6,536.5, while an attachment to that affidavit and the other attorney's affidavit claims total compensable costs of $6,441.58 (which is the sum of the items listed in the attachment).  Because the municipal defendants have adopted the slightly higher number of claimed hours as the starting point of their analysis, the court does the same.

who has been a member of the Massachusetts bar since 2005.
Fitzgerald-Boyd, for her part, was admitted to both the
Massachusetts and New Hampshire bars in 2004.  The motion to
admit Zizza pro hac vice was granted, and she and Fitzgerald-Boyd
represented the plaintiffs throughout the entirety of the
litigation.  Both attorneys say that, since 2009, their "standard
billing rate for a civil matter of this nature is $250" per hour.

The plaintiffs' initial complaint asserted six separately
numbered counts and named several different defendants:  Huppe;
Flanagan; the Town of Lee; the Lee Police Department and its
chief, Chester Murch; another officer from the department,
Raymond Pardy; and Brenda Tenaglia, a private citizen from whom
the plaintiffs had agreed to buy the camper.  The municipal
defendants were all represented by the same counsel.  A different
lawyer represented Tenaglia and, while she joined in some of the
municipal defendants' filings and discovery requests throughout
the litigation, she made many of her own, including her own
answer, interrogatories, and motion for summary judgment.

Following the preliminary pretrial conference, the court
ordered the plaintiffs to "amend their complaint to clearly
indicate which plaintiffs and defendants are parties to each
count."  Order of Jan. 3, 2011.  The plaintiffs did so, resulting
in amended complaint in the following counts:

• violation of the plaintiff's federal constitutional rights, specifically, their "due process and procedural rights," against all defendants (count 1);

• intentional infliction of emotional distress, against all defendants (count 2);

• breach of contract, against Tenaglia (count 3);

• "trespass of chattels," against all defendants (count 4);

• violation of the New Hampshire constitution, against all defendants (count 5); and

• violations of 42 U.S.C. §§ 1983 and 1985, against the municipal defendants (count 6).

The amended complaint sought compensatory damages, including $3,341.43 in lost personal property, as well as fees and costs.

The events giving rise to these claims began in July 2007, when Tenaglia entered into a handwritten agreement with Foley and Vankooiman to sell them her camping trailer and its attached porch, which were located on a site at a campground in Lee.  The agreement required the plaintiffs to pay Tenaglia $3,500 for the camper in two installments--$1,600 upon the signing of the agreement and the remaining $1,900 by August 1, 2007--and provided that, if the entire purchase price was not paid by that date, the sale would be void and the money paid would be forfeited.  Although the written purchase and sale agreement did not address the use of the camper pending payment in full,

Tenaglia allowed the plaintiffs to use the camper after they made the initial payment.

As of August 3, 2007, however, the plaintiffs had failed to pay Tenaglia the balance on the camper. In response, Tenaglia called the Lee Police Department, which sent Huppe to the camping park. There, he met separately with both Tenaglia and Foley, and ultimately convinced Tenaglia to accept payment for the amount due on the camper in the form of a check for the outstanding amount. Tenaglia testified, however, that when she presented the check at the bank the next day, the teller informed her that the account had insufficient funds to cover the check and that the bank would not cash it.

Tenaglia called Huppe, telling him the check had not cleared and that, as a result, the plaintiffs could no longer stay in the camper. In response, Huppe went to the campground and relayed this message to the plaintiffs, telling them they would have to leave the camper by 4 p.m. Later in the day, Flanagan relieved Huppe when his shift ended, and went to the campground to check on the camper. There, he found the plaintiffs packing their belongings into their vehicles. He told them that they were "close to being arrested" for criminal trespass but gave them until 6 p.m. to leave.

When Flanagan returned to the campground around that time, he again saw the plaintiffs, who now appeared to be on their way out of the campground.  In fact, the plaintiffs did not leave the premises, but went to visit with friends at another campsite.  Upon learning of this, the campground's owner told Flanagan that the plaintiffs had to leave the campground.  Flanagan proceeded to relay this message to the plaintiffs, who left the premises in response.  The plaintiffs departed without retrieving all of their personal property from the camper, leaving behind, <u>inter alia</u>, a day bed and a fish tank (with fish).  Tenaglia subsequently destroyed or otherwise disposed of those items.

In late November 2011, following a period of occasionally contentious discovery practice, both the municipal defendants and Tenaglia moved for summary judgment on all of the plaintiffs' claims.  The plaintiffs initially objected to those motions in their entirety but, at oral argument on the motions, conceded to the entry of summary judgment against them on their claim under the New Hampshire constitution and, a few days later, voluntarily dismissed their breach of contract claim against Tengalia.  In the meantime, in late March 2011, the parties participated in a mediation session with Magistrate Judge McCafferty, but were unable to resolve the lawsuit.

6

In May 2012, the court issued a written order granting
summary judgment to the defendants on all claims except for the
procedural due process claim against Huppe and Flanagan and the
trespass to chattels claim against Tenaglia.  Foley v. Town of
Lee, 2012 DNH 081.  The remaining claims proceeded to trial
before a jury.  On the second day of trial, the plaintiffs
advised the court that they had settled their claim against
Tenaglia and, on the third day of trial, they advised the court
that they had settled their claims against the municipal
defendants as well.  As a result, the jury was discharged before
the close of the plaintiffs' case.  The terms of the plaintiffs'
settlement with the municipal defendants have not been disclosed
to the court, except for the provision that, as noted at the
outset, the plaintiffs could "submit an application for fees and
costs through and including April 2, 2012, as though pursuant to
42 U.S.C. § 1988."[2]

---

[2]April 2, 2012 was on or around the day that the municipal
defendants made a purported offer of judgment to the plaintiffs,
see Fed. R. Civ. P. 68, which--had the jury's verdict come in
lower than the offer--would have prevented the plaintiffs from
recovering any of their post-offer attorneys' fees.  See King v.
Rivas, 555 F.3d 14, 20 (1st Cir. 2009) (discussing Marek v.
Chesny, 473 U.S. 1 (1985)).  It is presumably for this reason
that the parties' agreement limits the plaintiffs' recovery of
their attorneys' fees to those incurred on or before that date.

## II.  Applicable legal standard

The Fees Act provides that in civil rights cases brought under 42 U.S.C. § 1983 (as this one was), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001).  The burden is on the plaintiffs, however, to prove that the amount they have requested is reasonable. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

In calculating a reasonable amount of fees, courts generally use what is known as the "lodestar" method:  "multiplying the number of hours productively spent by a reasonable hourly rate." De Jesus Nazario v. Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). Where appropriate, the court "may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case." Id.  Likewise, the court may adjust counsel's standard hourly rate so that it conforms with "prevailing rates in the community" for comparable work, "taking into account the qualifications, experience, and specialized

8

competence of the attorneys involved." Gay Officers Action
League, 247 F.3d at 295.  Finally, after determining the
"lodestar" amount, the court "has the discretion to adjust the
lodestar itself upwards or downwards based on several different
factors, including the results obtained, and the time and labor
required for the efficacious handling of the matter."  De Jesus
Nazario, 554 F.3d at 207.

III. **Analysis**

In calculating the plaintiffs' "reasonable attorney's fee"
in this action, the court must (A) figure the number of hours
productively spent by the counsel for the plaintiffs, (B) decide
on the reasonable hourly rate for such work, and then
(C) multiply those two numbers together and consider whether to
adjust the result upward or downward for discretionary reasons.
De Jesus Nazario, 554 F.3d at 207; Torres-Rivera, 524 F.3d at
336.  As discussed in detail infra, this exercise results in an
award to the plaintiffs of $29,550.50 in attorneys' fees.  The
plaintiffs are also entitled to $2,963.98 in costs.

A.   **Hours productively spent**

The first part of the "lodestar" method requires the court
to tally up the number of hours productively spent by the
plaintiffs' counsel, removing any "time that was unreasonably,

unnecessarily or inefficiently devoted to the case." De Jesus Nazario, 554 F.3d at 207. Zizza claims to have spent 126.60 hours on this case, while Fitzgerald-Boyd claims to have spent 94.75 hours, for a total of 221.35 hours. The municipal defendants have challenged a number of these hours as unnecessary, unreasonable, or inefficient, or otherwise unrecoverable. These challenges fall into five broad categories. For the reasons set forth infra, the court rejects some of these challenges, but accepts others, and calculates the hours productively spent by the plaintiffs' counsel accordingly.

1. **Time spent prior July 22, 2010**. The plaintiffs seek to recover for 4 hours and 40 minutes that Zizza spent on their behalf before July 22, 2010, which is when her records indicate that she began legal research for the purpose of drafting the complaint in this matter. The defendants object, arguing that "[t]he time that is compensable under § 1988 is that reasonably expended on the litigation." Webb v. Bd. of Educ., 471 U.S. 234, 242 (1985) (quotation marks omitted). As Webb recognizes, however, "some of the services performed before a lawsuit is formally commenced by filing a complaint are performed 'on the litigation,'" including "the work associated with developing a theory of the case." Id. at 243.

By this standard, the majority of the time Zizza spent on behalf of the plaintiffs prior to July 22, 2010 is clearly compensable, because it encompassed an initial assessment of the case, research into the Town and its personnel, and communications with the plaintiffs themselves.  The municipal defendants point out that Zizza's services prior to July 22, 2010 also included drafting a demand letter to the Town, but at least one court has ruled that an attorney's fees incurred in trying to settle a claim against a party before filing suit are indeed recoverable under § 1988 as "an effort to reduce litigation expense by persuading a necessary party to forego a place in the litigation." Pruett v. Harris Cty. Bail Bond Bd., 593 F. Supp. 2d 944, 947 (S.D. Tex. 2008).  In the absence of any countervailing authority or argument from the municipal defendants, the court finds this reasoning persuasive.  The plaintiffs can recover the fees Zizza incurred prior to July 22, 2010, including the time she spent on the demand letter.

   **2.  Time spent on claims against Tenaglia**.  In their motion for attorneys' fees, the plaintiffs seek to recover for time their attorneys (according to their billing records) devoted solely to pursuing their claims against Tenaglia, viz., time spent reviewing or responding to filings or discovery requests made by Tenaglia alone.  The municipal defendants object to

reimbursing the plaintiffs for time their attorneys spent
"exclusively on [p]laintiffs' claims against Tenaglia."

In their reply, the plaintiffs agree that billing "entries
that have no ties to the [§] 1983 claim would not be properly
assessed against municipal defendants but many of the entries
do." The plaintiffs, however, do not identify any of those
entries (aside from a few occasions when counsel for the
municipal defendants became involved in what had begun as a
discovery-related discussion between counsel for the plaintiffs
and counsel for Tenaglia, and the municipal defendants did not
object to the plaintiffs' recovery of any of the fees incurred on
those occasions anyway). Instead, the municipal defendants
object to paying the fees the plaintiffs incurred in responding
to filings and discovery requests made by Tenaglia alone. This
is not a case, then, where state-law claims against a private
defendant are "so factually imbricated with the federal civil
rights claim as to make separate treatment of the constituent
attorney time inappropriate" in calculating the fee award.
Wagenmann v. Adams, 829 F.2d 196, 225 (1st Cir. 1987). To the
contrary, the billing records contain a number of entries
describing work dedicated solely to the claims against Tenaglia
and therefore--as the plaintiffs acknowledge--not properly
chargeable to the municipal defendants.

12

Despite this acknowledgment, the plaintiffs state in their
reply that they can recover the fees they incurred in litigating
against Tengalia because she "would not have been able to commit
the trespass of chattels claim without the [§] 1983 violation of
the municipal defendants."  Thus, they argue, the fees incurred
in suing Tenaglia "were a direct result of the [§] 1983
violation."  This seems to suggest that the fees expended on the
claims against Tenaglia were an element of the plaintiffs'
damages on their § 1983 claim against the municipal defendants.
This is a dubious suggestion at best but, even assuming it is
true, the settlement between the plaintiffs and the municipal
defendants does not allow the plaintiffs to recover additional
damages against the municipal defendants at this point, but only
"fees and costs . . . as though pursuant to 42 U.S.C. § 1988."
Section 1988 does not authorize the recovery of attorneys' fees
incurred as the result of a § 1983 violation (e.g., fees paid to
a criminal attorney to defend the plaintiff against charges that
were brought without probable cause) but "only authorize[s] the
district courts to allow the prevailing party a reasonable
attorney's fee in an 'action or proceeding to enforce [§ 1983].'"
Webb, 471 U.S. at 241 (ruling that § 1988 did not allow
plaintiff, a public schoolteacher, to recover the attorneys' fees
incurred in challenging his termination before the local board of

13

education, even though he later prevailed on his § 1983 claim that his termination violated his constitutional rights); see also Bogan v. City of Boston, 489 F.3d 417, 427 (1st Cir. 2007) (ruling that § 1988 did not allow plaintiffs to recover fees incurred in proceedings undertaken to mitigate their damages from the violation giving rise to the § 1983 claim).

As the plaintiffs appear to concede, the time their attorneys spent exclusively on their claims against Tenaglia was not spent "to enforce § 1983" against the municipal defendants. So the plaintiffs cannot recover for the cost of that time, which, according to their attorneys' billing records, totals 22.5 hours, against the municipal defendants under § 1988.

3. **Time spent on plaintiffs' expert witness**. The plaintiffs seek to recover fees their lawyers expended in identifying and working with a prominent New Hampshire attorney whom they designated as an expert witness to testify at trial. Ultimately, however, the municipal defendants moved to preclude any testimony by the witness at trial, and the court ruled that he could not testify because his anticipated testimony--as clarified by the plaintiffs in their response to the motion--was "'expert testimony proffered solely to establish the meaning of a law'" and, as such, was "'presumptively improper.'" Foley v.

Town of Lee, 2012 DNH 082, 7 (quoting United States v. Mikutowicz, 365 F.3d 65, 73 (1st Cir. 2004)).

Based on this ruling, the municipal defendants object to reimbursing the plaintiffs for any of the fees their attorneys incurred in connection with this proffered expert (including for the time they spent identifying him, communicating with him, and scheduling and defending his deposition). The municipal defendants argue that this time was spent unreasonably, unproductively, and unnecessarily in light of the "black-letter law," as the court noted in its order excluding the witness, "that it is the court, not an expert witness, who informs the jury as to the law they must apply in the case at hand." Id.

Courts applying § 1988 have refused to award fees paid to proffered experts whose testimony was excluded prior to trial, see Lynn v. Maryland, 295 F. Supp. 2d 594, 599 (D. Md. 2003), or was otherwise deemed irrelevant to the successful claim, see Vialpando v. Johanns, 619 F. Supp. 2d 1107, 1130 (D. Colo. 2008). This court agrees that, likewise, a plaintiff should ordinarily not be permitted to recover the fees his attorney incurred in connection with a designated expert witness whose testimony was disallowed--at least on grounds as clear as those on which this court disallowed the plaintiffs' proffered expert testimony here. Time spent dealing with a retained expert whose planned testimony

15

would be recognized as inadmissible by any reasonable attorney is simply not time well-spent.[3]  Accordingly, the plaintiffs cannot recover the fees their attorneys incurred in dealing with the plaintiffs' proffered expert testimony, which, according to their attorneys' records, totals 7 hours and 7 minutes.[4]

    **4.  <u>Other time spent unproductively</u>.**  The municipal defendants have identified a number of other entries in plaintiffs' counsel's billing records that, the municipal defendants argue, was spent unreasonably, unnecessarily, or unproductively.  These entries fall into three categories:

    **a.  Time spent correcting counsel's errors.**  Time that counsel spend correcting their own errors in filings and the like is generally not compensable under § 1988.  <u>See</u>, <u>e.g.</u>, <u>Heller v. District of Columbia</u>, 832 F. Supp. 2d 32, 53 (D.D.C. 2011)

---

    [3]In their reply, the plaintiffs state that their designated expert "was not retained to instruct the jury on the law.  The scope of what [their expert] was initially retained for had manifested into something very different as a result of his expert report."  But the plaintiffs do not identify the subject as to which they "initially retained" the expert to testify, let alone explain how that testimony would have been admissible (or at least how a reasonable attorney would have thought it could be).

    [4]The court has not deducted the 45 minutes or so that the plaintiffs' attorneys spent conferring with their client and others about the need for an expert witness.  Deciding whether an expert witness is necessary is part of an attorney's work in nearly every civil case.

(citing cases).  So the plaintiffs cannot recover for the time
their attorneys spent on the following tasks:

> • revising and refiling the complaint to comply with this
> court's Local Rules and Administrative Procedures for
> Electronic Case Filing, a total of 48 minutes; and

> • amending the complaint in response to a court order "to
> clearly indicate which plaintiffs and which defendants are
> parties to each count," see League of Latin Am. Citizens v.
> Roscoe Indep. Sch. Dist., 119 F.3d 1228, 1223 (5th Cir.
> 1997) (disallowing recovery of time spent amending complaint
> to correct pleading defects), a total of 2 hours and 55
> minutes (which is much longer than that task should have
> taken, in any event).

**b.  Time that was excessive.**  The municipal defendants also
complain that counsel for the plaintiffs spent more hours than
reasonably necessary on certain tasks.  In large part, the court
agrees, deducting a total of 8.5 hours.  In particular:

> • on January 3, 2011, the date of the preliminary pretrial
> conference, Fitzgerald-Boyd claims to have spent 3 hours on
> "pretrial prep, meeting with clients and [Zizza]."  The
> court can see no reason why preparing for the conference and
> meeting with the plaintiffs should have taken so long,
> especially in light of the many hours that Zizza had already
> spent meeting with the plaintiffs at that early stage of the
> (including a 90 minute meeting just two weeks earlier on
> "discovery and possible evidence").  So the court will allow
> the plaintiffs to recover for only 30 minutes of the time
> Fitzgerald-Boyd spent meeting with them on that day;[5]

---

[5]While some of the 3 hours Fitzgerald-Boyd claims to have
worked on the case on this day was devoted to "pretrial prep,"
she does not identify that work any more specifically, nor does
she segregate the time she spent on that work from the time she
spent meeting with the plaintiffs.  To add to the confusion, the
plaintiffs suggest in their reply that Fitzgerald-Boyd spent this
time attending the preliminary pretrial conference--but that
lasted only 30 minutes and is the subject of a separate billing

• on March 19, 2012, Zizza and Fitzgerald-Boyd each claim to have spent six hours conducting research on reported settlements of civil rights actions, apparently in preparation for the mediation session.  Using two different attorneys to research such a limited subject was plainly excessive, particularly for such a long stretch of time (and in addition to 2.5 hours Zizza spent speaking to other attorneys "who are familiar [with] or have settled these types of cases").  "[A] court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case," particularly where, as here, counsel has not "persuasively described their division of responsibility and need for teamwork."  Gay Officers Action League, 247 F.3d at 298-99.[6]  Accordingly, this court will allow the plaintiffs to recover for just half of the time that their attorneys claim to have spent on this day, i.e., 6 hours.

But the court will allow the plaintiffs to recover for other time challenged by the municipal defendants, viz., the 1.5 hours that Fitzgerald-Boyd spent researching and drafting an objection to a discovery motion filed by the municipal defendants.  In substance, that motion sought an order compelling Vankooiman to authorize his bank to provide his account records to the

---

entry.  This kind of "uncertainty counts against the plaintiffs, since they have the burden of proof" on their claim for fees.  Frost v. Town of Hampton, 2010 DNH 072, 10.

[6]In their reply, the plaintiffs state that "[e]ach attorney was researching different civil issues . . . and not duplicating each other's efforts."  This explanation is inadequate, particularly in light of the fact that, by that point, the summary judgment motions had been fully briefed.  While Fitzgerald-Boyd says she spent her time that day in part "searching for jury instructions in [§] 1983 cases," the plaintiffs' proposed jury instructions on their § 1983 claim consisted largely of boilerplate and did not cite any authority, aside from the New Hampshire Model Civil Jury Instructions.

municipal defendants (as well as attorneys' fees and costs).  As
this court has previously observed, that relief (ordering a party
to authorize a third party to release records under its control)
is generally unavailable under the Federal Rules of Civil
Procedure.  Saalfrank v. Town of Alton, 2009 DNH 162, 28-29.  The
court will not prevent the plaintiffs from recovering fees their
attorney expended in responding to an unfounded discovery
motion.[7]  Cf. Gay Officers' Action League, 247 F.3d at 298
(reasoning that, after engaging in litigation tactics "forcing
the plaintiffs to respond," a defendant cannot be heard "to
castigate the plaintiffs" for their "excessive" response).

    **c.  Time spent on clerical/paralegal tasks**.  In awarding
fees under § 1988, "clerical or secretarial tasks ought not to be
billed at lawyers' rates, even if a lawyer performs them."
Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992).  On this
basis, the municipal defendants challenge a total of 9 hours and
24 minutes of Fitzgerald-Boyd's entries, arguing that the

---

    [7]Nor will the court prevent the plaintiffs from recovering
for the 45 minutes Fitzgerald-Boyd spent reviewing orders from
the case of Brennan v. Glick, No. 366-8-4 (Vt. Super. Ct.), and
discussing it with the attorney who represented the plaintiff
there.  That case, like this one, involved a § 1983 claim against
a law enforcement officer for depriving the plaintiff of
property, so it was reasonable for Fitzgerald-Boyd to look into
it in preparing this case for mediation and trial.

plaintiffs should be reimbursed for the work at less than her

claimed customary hourly rates.[8]   These entries include:

> • 4 hours that Fitzgerald-Boyd claims to have taken to
> "revise and finish" the complaint, as well as to draft the
> motion to admit Zizza pro hac vice and the civil action
> cover sheet;
>
> • 3.4 hours that Fitzgerald-Boyd claims to have taken to
> "prepare" and "retype" the plaintiffs' interrogatory answers
> and send them, under cover of a letter she drafted, to the
> plaintiffs for review; and
>
> • another 2 hours Fitzgerald-Boyd claims to have taken to
> "finish" those answers, as well as a response to a request
> for production of documents, and send them to counsel for
> municipal defendants.

In their reply, the plaintiffs do not disagree with the

municipal defendants' characterization of these entries as

"paralegal or secretarial-type work," arguing instead that they

were "necessary" (which is probably true, but beside the point).

The plaintiffs have provided no reason to think that it was

necessary for an attorney--as opposed to a paralegal or legal

secretary--to perform these tasks.   Accordingly, the court will

allow the plaintiffs to recover for the time Fitzgerald-Boyd

spent on these tasks, but at the reduced rate of $70 per hour.

See Lipsett, 975 F.2d at 939-40 (upholding fee award of 40% of

---

[8]The municipal defendants argue that Fitzgerald-Boyd should
be reimbursed at less than her reasonable hourly rate for the
hour or so she spent traveling back and forth to the site of one
of the depositions in the case.   In the court's experience,
though, few attorneys bill for travel time at a reduced rate, so
the court declines to impose such a reduction here.

attorney's reasonable hourly rate for work that "fell into the gray area between purely clerical tasks and those properly entrusted to a paralegal").[9]

  5. **Miscellaneous uncompensable time.**  Finally, the municipal defendants object to another 4 hours and 35 minutes that the plaintiffs' attorneys claim to have spent.  They note that, though Zizza says she spent 1 hour and 20 minutes attending depositions in the case on October 6, 2011, in fact no depositions occurred on that day (those depositions actually occurred on November 15, 2011).  The municipal defendants also note that the plaintiffs seek reimbursement for the 3 hours and 15 minutes that Fitzgerald-Boyd claims to have spent drafting the motion for attorneys' fees, despite the fact that this work was performed after April 2, 2012 and, as result, is not recoverable under the parties' agreement.  The plaintiffs do not address either of these points in their reply.  Accordingly, the plaintiffs cannot recover for this 3 hours and 35 minutes.

  After making all of the deductions described supra, the court determines that, on or before April 2, 2012, counsel for the plaintiffs productively spent 165.75 hours on their § 1983 claim against the municipal defendants, rather than the 222.35

---

  [9]As discussed infra at Part III.B, the court finds $175 to be a reasonable hourly rate for plaintiffs' counsel's work on this case.

hours for which the plaintiffs seek reimbursement (though 9.4
additional hours are compensable at a reduced rate).

## B.  Reasonable hourly rates

In the second step of the "lodestar" analysis, the court
determines a reasonable hourly rate for the work done by
plaintiffs' counsel.  In making that determination, "the court
may take guidance from, but is not bound by, an attorney's
standard billing rate." Gay Officers Action League, 247 F.3d at
296.  Rather, the "court's primary concern is with the market
value of counsel's services." United States v. One Star Class
Sloop, 546 F.3d 26, 40 (1st Cir. 2008).  Where appropriate, the
court may adjust counsel's standard rate so that it conforms with
"prevailing rates in the community" for comparable work, "taking
into account the qualifications, experience, and specialized
competence of the attorneys involved." Gay Officers Action
League, 247 F.3d at 295.

Here, as noted at the outset, the plaintiffs seek to recover
for all of Zizza's and Fitzgerald-Boyd's time at the rate of $250
per hour.  While each attorney states that this figure represents
her "standard billing rate for a civil matter of this nature,"
the plaintiffs have provided no evidence of how that compares to
prevailing rates in the community for such work.  That leaves
this court "to rely upon its own knowledge of attorneys' fees in

its surrounding area" in arriving at a reasonable rate.  Andrade
v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996).
Based upon that information, the court agrees with the municipal
defendants argument that $175 represents a reasonable hourly rate
for both Zizza and Fitzgerald-Boyd, in light of their
qualifications and experience.

In an opinion issued roughly two years before counsel
completed their compensable work for the plaintiffs here, this
court concluded that $190 and $160 represented reasonable hourly
rates for attorneys with 11 and 5 years of experience,
respectively.  Frost, 2010 DNH 072, 14.  In reaching this
conclusion, the court relied on a "survey of New Hampshire
attorneys [which] indicates that most attorneys over age 40
charge between $151 and $250 per hour and that most younger
attorneys charge between $120 and $125."  Id. at 12 (citing N.H.
Bar Ass'n, 2006 Statistical Supplement 11 (2006)).  The court
further relied on the fact that "[o]ver the last decade, the
rates awarded to civil rights attorneys in this district have
consistently fallen within that range."  Id. (citing numerous
cases from this district calculating fee awards in civil rights
actions).  In finding reasonable rates within these ranges, this
court observed that Frost was "not the type of case that cries
out for special treatment, either high or low.  It is an ordinary

23

civil rights matter that most litigation attorneys in New Hampshire would have been capable of handling." Id. at 13. This case also fits that description, and the plaintiffs do not argue to the contrary.

Instead, the plaintiffs say that this court cannot rely on its prior analysis of reasonable fees in garden variety civil rights cases in Frost because "two years have passed since that time." But this argument overlooks the fact that, in Frost, this court decided reasonable rates for work performed between fall 2009 and winter 2010, while plaintiffs' counsel's compensable work on this case began just a few months later, in early spring 2010, continuing for the next two years. Moreover, both Fitzgerald-Boyd and Zizza say that they have not raised their hourly rates since 2009--and, again, the plaintiffs have provided the court with nothing to show how those rates compare with the market, let alone to suggest that market rates have increased since early 2010 even though their own counsel's rates did not.

The court disagrees with the plaintiffs, then, that the data collected in Frost as to reasonable rates in civil rights cases is "stale information" such that those rates "should be adjusted upward" here. Instead, the court agrees with the municipal defendants that $175 represents a reasonable hourly rate for both

Zizza and Fitzgerald-Boyd, who, at the time the case began, had
roughly five and six years experience, respectively.

## C. Discretionary adjustment

In the final step of the lodestar process, the court
multiplies the hours productively spent by the reasonable hourly
rate to arrive at the "lodestar" amount and then, if appropriate,
"adjust[s] the lodestar itself upwards or downwards" for
discretionary reasons.  DeJesus Nazario, 554 F.3d at 207.  Using
the hours and rates determined above, the "lodestar" amount
equals $29,664.25 ($29,006.25 for 165.75 hours at $175 per hour,
plus $658 for the 9.1 hours of paralegal/clerical tasks at the
reduced rate of $70 per hour).  The plaintiffs do not seek an
upward adjustment of the lodestar.

The municipal defendants, however, argue that the court
should adjust the lodestar downward by "at least two-thirds,"
because, at the time the parties reached their settlement of the
case, "only one-third of the municipal defendants and only one-
tenth of the legal theories asserted against them remained."  It
is true that, prior to the settlement, the plaintiffs agreed that
summary judgment should enter against them on their claim against
the municipal defendants under the New Hampshire constitution,
and the court later granted the municipal defendants' summary
judgment motion as to the plaintiffs' substantive due process,

intentional infliction of emotional distress, and trespass to
chattels claims, and as to the plaintiffs' procedural due process
claim in part.  It is also true that "where multiple claims are
interrelated and a plaintiff has achieved only limited success,
awarding her the entire lodestar amount would ordinarily be
excessive." Andrade, 82 F.3d at 1191 (discussing Hensley v.
Eckerhart, 461 U.S. 424 (1983)).  But it does not follow that the
dismissal of some, or even most, of a plaintiff's claims prior to
a settlement means that he has "achieved only limited success"
and should have his fee award reduced.

    To the contrary, "the pro-rata allocation of general fees
between claims for which a fee award is appropriate and claims
for which such an award is inappropriate, based solely on the
number of claims, is impermissible." Harris v. Maricopa Cty.
Super. Ct., 631 F.3d 963, 971 (9th Cir. 2011).  Instead, "the
test that emerged from Hensley is that a court should award only
the amount of fees that is reasonable in relation to the results
obtained." Andrade, 82 F.3d at 1191.

    Here, the municipal defendants do not argue that awarding
the plaintiffs the lodestar amount would be unreasonable in
relation to the results obtained.  Moreover, the court could not
meaningfully assess such an argument, because, as noted supra,
the parties have chosen not to enlighten the court as to the

monetary or other aspects of the settlement, so the court cannot
tell exactly what results the plaintiffs obtained.  Based on in-
chambers discussions with counsel during recesses in the trial,
however, the court is aware that the plaintiffs received some
payment from the municipal defendants in the settlement.

Based on this record, the court cannot say that the
plaintiffs achieved only "limited success" so as to justify
reducing their fee award below the lodestar amount.  Indeed, the
plaintiffs received the relief they were seeking from the
municipal defendants:  compensation for their actions in
separating the plaintiffs from the camper.  While the plaintiffs
presumably did not recover the entirety of compensation to which
they believed they were entitled, this "limitation" on their
success was, so far as the court can tell, unrelated to the fact
that certain claims and defendants were dismissed from the case
before it settled.

In fact, all of the plaintiffs' claims arose out of a single
course of conduct by the municipal defendants (again, their
actions in separating the plaintiffs from the camper) so the
dismissal of certain claims before settlement had, so far as the
court can tell, no practical effect on the compensatory damages
the plaintiffs could have recovered at trial.  Nor can the court
say, based on the billing records, that the plaintiffs' "fees and

expenses would have been significantly reduced had [they] conducted a meaningful evaluation of the case and elected to bring only" those claims that survived summary judgment. Andrade, 82 F.3d at 1191 (quotation marks omitted).  The court therefore declines to adjust the plaintiffs' fee award downward from the lodestar based on their "limited success."  See Frost, 2010 DNH 072, 15-16 (rejecting defendant's argument that plaintiffs' success on only one of their two theories justified reducing the fee award).

**D.  Costs**

Finally, the municipal defendants challenge the plaintiffs' entitlement to certain of their claimed $6,441.58 in costs.  The court agrees that these costs are not recoverable here.  First, the plaintiffs seek to recover the fees they paid their designated expert witness to prepare his report and appear for his deposition but, as the municipal defendants point out, § 1988 does not allow prevailing plaintiffs in § 1983 actions to recover their expert witness fees.  See W. Va. Univ. Hosps., Inc. v. Carey, 499 U.S. 83, 102 (1991).[10]  Second, the plaintiffs seek

---

[10]While § 1988 was amended in response to this decision, see Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994), the amendment authorizes courts to "include expert fees as part of the attorney's fee" only in "an action or proceeding to enforce [42 U.S.C. §§] 1981 or 1981a."  Civil Rights Act of 1991, Pub. L. 102-166, § 113, 105 Stat. 1071 (codified at 42 U.S.C. § 1988(c)).

recovery of their costs in serving a number of witnesses with subpoenas to appear at trial, as well as their witness fees, <u>see Fed. R. Civ. P. 45(b)(1)</u>, but, as the municipal defendants point out, those costs were incurred after April 2, 2012 and, as a result, are not recoverable under the parties' agreement.

The plaintiffs do not dispute either of these points in their reply.  Accordingly, the plaintiffs cannot recover, as costs, the fees they paid to their designated expert or the sums they expended in getting witnesses to appear at trial.  After subtracting those expenses, the plaintiffs are entitled to costs of $2,963.98.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the plaintiffs' motion for an award of attorneys' fees and costs[11] is GRANTED in part.  The municipal defendants shall forthwith remit $29,664.25 in attorneys' fees and $2,963.98 in costs to the plaintiffs, via their counsel.  The plaintiffs' motion to strike and replace a

---

Because this is not an action under §§ 1981 or 1981a, § 1988 does not allow the plaintiffs to recover expert witness fees.  <u>See</u> <u>Drumgold v. Callahan</u>, 806 F. Supp. 2d 428, 436 (D. Mass. 2011).

    [11]Document no. 102.

29

paragraph of their reply brief is GRANTED[12] and the corrected

reply was considered in ruling on these issues.


        **SO ORDERED.**

                                    _____
                                    Joseph N. Laplante
                                    United States District Judge

Dated:    November 9, 2012

cc:   Kimberly A. Zizza, Esq.
      Jacqueline C. Fitzgerald-Boyd, Esq.
      R. Matthew Cairns, Esq.
      Edmund J. Waters, Jr., Esq.

---

[12]Document no. 106.

30